IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

BLACKSMITH INVESTMENTS, :
LLC,
                                            :
    Plaintiff,
                                            :
v.                                                          Docket No. 04 10369 NG
                                            :
CIVES STEEL CO., INC.,
NEW ENGLAND DIVISION,         :

    Defendant.                        :

---

**AFFIDAVIT OF MARTIN C. KENISTON
in support of
<u>DEFENDANT'S MOTION TO DISMISS</u>**

    I, Martin C. Keniston submit this affidavit in support of the motion of the defendant Cives Corporation (sued herein as Cives Steel Co., Inc., New England Division), to dismiss the February 19, 2004 Complaint of the plaintiff Blacksmith Investments, LLC ("Blacksmith").

1.    I am and was the Manager of Cives' Accounting Department at the time Cives retained Boston Steel Erectors, Inc. ("BSE"). As Cives' Accounting Manager, I am responsible for maintaining a true and accurate copy of the July 17, 2002 subcontract between Cives and BSE (the "Contract"). Attached is a true and accurate of same.

Signed this 30th day of July, 2004 under the pains and penalties of perjury.

                                                               Martin C. Keniston
                                                              Manager of Accounting
                                                              Cives Corporation

On this 28th day of July, 2004, before me, the undersigned notary public, personally appeared Martin C. Keniston, and proved to me through satisfactory evidence of identification which was his driver's license, to be the person who signed the within Affidavit and who swore or affirmed to me that he is the Accounting Manager of Cives Corporation and that he is authorized to sign the within Affidavit on behalf of said corporation and that the Affidavit's contents are truthful and accurate to the best of his knowledge and belief.

NOTARY SEAL            _John William Hall_

JOHN WILLIAM HALL
Notary Public, Maine
My commission expires My Commission Expires November 2, 2010

## CERTIFICATE OF SERVICE

This is to certify that I have this day served upon the opposing party in this action, the within Affidavit of Martin C. Keniston in Support of Defendant's Motion To Dismiss The Complaint via United States Mail, with proper postage affixed, addressed to the following:

>     Guy E. Guarino, Esq.
>     BBO No. 213960
>     72 Country Club Way
>     Ipswich, Massachusetts  01938

This 3rd day of August, 2004.

Attorney for Defendant Cives Corporation

_____
Joseph A. Barra
BBO# 632534
Gadsby Hannah, LLP
225 Franklin Street
Boston, MA  02110
jbarra@ghlaw.com
(617) 345-7061

2

# Subcontract Agreement

Subcontract Agreement #: 970
Subcontract Agreement Date: 7/17/02



(Herein "Contractor")
Subcontractor:

**Boston Steel Erectors
910R Broadway Route 1N
Saugus  MA  01906-3204**

The above Subcontract Agreement Number must appear on all invoices, correspondence and other documents.

Performance by Subcontractor of any part of the Scope of Work set forth below constitutes acceptance of this Subcontract Agreement ("Subcontract"), including all Subcontract Provisions ("Subcontract Provisions") and all Subcontract Terms and Conditions, including attached Exhibits, set forth below ("Subcontract Terms") which together will constitute the entire agreement between the parties hereto.

## SUBCONTRACT PROVISIONS

1. Scope of Work
Furnish all labor, equipment and supervision to receive, unload and erect the structural steel and metal deck and furnish and install all shear studs in accordance with the subcontract documents for the Manulife Financial Center Building in Boston, Massachusetts.
The subcontract documents shall consist of this subcontract purchase order (including attached Exhibit "A"), the agreement between the contractor (Clark/Suffolk) and subcontractor (Cives Steel), the agreement between the owner and contractor, and the subcontract drawings listed in Exhibit "A". These form this subcontract and are as fully a part of this subcontract as if attached to this agreement or repeated herein.

2. Project Site Location and Shipping Instructions
Clark/Suffolk
601 Congress Street
Boston  MA  02210

3. Contract Documents
Structural drawings per Exhibit A.  Structural Steel Specification Section 05120 dated 7/16/01, pages 1 – 14.
Steel Deck Specification Section 05310 dated 7/16/01, pages 1 – 6.
(Copies of the above already in your possession).

4. Schedule
Start anchor bolt survey 7/1/02
Start setting baseplates w/o 7/22/02
Start erection of garage columns and ground floor w/o 7/22/02
Start erection of Level 2 and Tower 9/16/02 – Hang by 1/21/03.  *Completed by 2/25/03* ①

5. Price and Payment Terms  *Per Proposal*
~~For price, see Exhibits "B" and "C".~~
~~Pencil copy of requisition to be submitted by 15th of each month for value through the end of the month.~~
~~Hard copy to be submitted upon approval of pencil copy by the owner.~~

6. State Sales/Use Taxes
Not included.

7. Quality Assurance
Erection parameters, plumbing of building, etc. per contract documents.

8. Miscellaneous Requirements
Subcontractor will perform the Work in compliance with the 29 CFR 1926 Part R standards, and will furnish a written erection plan to Contractor which addresses any special lifts.

Exhibit "A" to Subcontract Purchase Order #970
Manulife Financial Headquarters, Boston, MA
Structural Steel Bid Drawings (thru Addendum #5)

| Drg. | Rev# | Drg. | Rev# |
|---|---|---|---|
| S001 | 3 | S300 | 2 |
| S002 | 4 | S301 | 1 |
| S003 | 3 | S302 | 1 |
| S004 | 4 | S303 | 2 |
| S100 | 5 | S304 | 3 |
| S101 | 2 | S305 | 3 |
| S102 | 2 | S306 | 2 |
| S103 | 2 | S307 | 1 |
| S104 | 2 | S500 | 2 |
| S105 | 2 | S501 | 2 |
| S106 | 2 | S502 | 2 |
| S107 | 2 | S503 | 4 |
| S108 | 2 | S504 | 4 |
| S109 | 2 | S504A | 2 |
| S110 | 2 | S505 | 2 |
| S111 | 2 | S506 | 2 |
| S112 | 2 | S507 | 2 |
| S113 | 2 | S508 | 2 |
| S114 | 2 | S509 | 2 |
| S115 | 2 | S510 | 1 |
| S116 | 2 | | |
| S200 | 3 | | |
| S201 | 3 | | |
| S202 | 4 | | |
| S203 | 3 | | |
| S205 | 2 | | |
| S206 | 3 | | |

| | EXHIBIT "B" TO SUBCONTRACT PURCHASE ORDER #970 | | | | | |
|---|---|---|---|---|---|---|
| | **MANULIFE ERECTION BASE BID** | | | | | |
| ITEM | | BOSTON STEEL | | | | |
| BASE | | $3,200,000.00 | | | | |
| GARAGE | | $100,000.00 | | | | |
| ALLOWANCES | | $46,900.00 | | | | |
| ATRIUM | | $110,000.00 | | | | |
| LIGHT BOX/4TH FLR. | | $20,000.00 | | | | |
| ADD # 5 | | $155,000.00 | | | | |
| 1/7/02 | | -$200,000.00 | | | | |
| 1/9/02 | | -$120,000.00 | | | | |
| BASE PLATES | | $25,000.00 | | | | |
| NETS | | $30,000.00 | | | | |
| TOTAL | | **$3,366,900.00** | | | | |
| Exhibit "C" | | $167,450 | | | | |
| TOTAL | CONTRACT AMOUNT | $3,534,350 | | | | |



| | EXHIBIT "C" TO SUBCONTRACT PURCHASE ORDER #970<br><br>MANULIFE FINANCIAL SCOPE CHANGES | | | |
|---|---|---|---|---|
| **CHANGE** | | | | **ERECTION** |
| 1.) NON-DESTRUCTIVE TESTING OF WELDS (SUBJECT TO AVAILABILITY) | | | | $0.00 |
| 2.) ECCENTRIC BRACE DETAIL (ADDED STIFFENERS) | | | | $0.00 |
| 3.) W12X40 COLUMNS (LOWER LEVEL ONE TO B3) | | | | $0.00 |
| 4.) EXPOSED FRAMING (DRG. S-114) GALVANIZED | | | | $0.00 |
| 5.) CANOPY SUPPORT TUBES | | | | $12,500.00 |
| 6.) SKEWED CONNNECTIONS | | | | $0.00 |
| 7.) EXTEND & TAPER CONTINUITY PLATES | | | | $0.00 |
| 8.) PRIME EXPOSED FRAMING (DRG.S-114) IN LIEU OF GALVD. | | | | $0.00 |
| 9.) ATRIUM DELETE ROOF PURLINS (HSS12X6) | | | | $0.00 |
| 10.) ATRIUM DELETE HORIZ. WINDOW TRUSSES (25 TRUSSES) | | | | -$43,000.00 |
| 11.) ADDENDUM # 14  (ADD THREE DAYS TO ERECTION SCHEDULE) | | | | $36,000.00 |
| 12.) ADDENDUM # 16 | | | | $600.00 |
| 13.) EXTERIOR TOWER CRANE (REVISED TO BALLAST FRAME) | | | | $120,000.00 |
| 14.) ADDENDUM #18 | | | | $0.00 |
| 15.) ADDENDUM #19 | | | | $27,000.00 |
| 16.) ADDENDUM #13 &RFI#043 &RFI#077 | | | | $0.00 |
| 17.) DELETE ALLOWANCES | | | | -$46,900.00 |
| 18.) LABOR INCREASES | | | | $61,250.00 |
| | | | | **$167,450.00** |
| | | | | |
| **ALTERNATE (Not Exercised)** | | | | |
| DELETE CANOPY SUPPORT TUBES | | | | -$28,000.00 |

# SUBCONTRACT TERMS AND CONDITIONS

1. <u>Subcontractor's Work</u>

   a. Subcontractor shall perform all work and shall furnish all supervision, labor, materials, plant, hoisting, scaffolding, tools, equipment, supplies and all other things necessary for the construction and completion of the work described in Paragraph 1 of the Subcontract Provisions and work incidental thereto (hereinafter "Work"), in strict accordance and full compliance with the terms of this Subcontract, and to the satisfaction of Contractor and Owner. "Owner" means the party with whom Contractor has contracted to perform Contractor's scope of work, as well as the actual Owner of the overall project.

   b. Subcontractor has received and reviewed all Contract Documents listed in Paragraph 3 of the Subcontract Provisions. In respect of work covered by this Subcontract, and except as expressly modified herein, Subcontractor shall assume toward the Contractor all obligations, risks and responsibilities which Contractor has assumed towards Owner in the Contract Documents and shall be bound to the Contractor in the same manner and to the same extent the Contractor is bound to the Owner by the Contract Documents, provided that where any portion of the Contract Documents between the Owner and Contractor is inconsistent with any portion of the Subcontract Provisions or Subcontract Terms, then the Subcontract Provisions and Subcontract Terms shall govern. *Please send for Review + Approval ⓀⒹ ✓ OK 8/2*

2. <u>Payment</u>

   a. Contractor shall pay Subcontractor for performance of the Work, subject to additions and deductions by change order, the Subcontract Price as set forth in Paragraph 5 of the Subcontract Provisions.

   b. Unless otherwise set forth under the Subcontract Provisions, monthly partial payments shall be due Subcontractor in the amount of 90% of the Work in place, and for which payment has been made to Contractor by Owner. Subcontractor shall submit an Application For Payment, containing a breakdown of the total Subcontract Price in form and detail acceptable to Contractor. In the event Contractor disapproves said breakdown, Contractor shall establish a reasonable breakdown which shall serve as the basis for partial payments. Any breakdown must be consistent with the allocation approved by Owner.

   c. Partial payments shall be due on or about the fifth day following receipt of payment from Owner by Contractor. No partial payment made under this Subcontract shall be considered an acceptance of the Work in whole or in part. All material and Work covered by partial payments shall become the property of Contractor, or, if the Contract Documents so provide, the property of Owner; however, this provision shall not relieve Subcontractor from the sole responsibility and liability for all Work and materials upon which payments have been made until final acceptance thereof by Owner.

   d. Subcontractor shall ensure that all sub-subcontractors (which includes employees, suppliers, laborers and materialmen of Subcontractor, and sub-subcontractors and sub-suppliers of any tier), at all times, are promptly paid all amounts due in connection with the performance of this Subcontract. After the first partial payment hereunder, Contractor shall have the right to withhold any subsequent partial payments until Subcontractor submits evidence satisfactory to Contractor that all previous amounts owed in connection with performance of this Subcontract have been paid. Contractor shall have the right, but not the duty, to directly pay any sub-subcontractor or sub-supplier of any tier upon receipt of notice that such party is unpaid, and shall thereafter be entitled to deduct such payments from amounts due to the Subcontractor. Subcontractor may be required to furnish with any payment application (a) an affidavit stating that all obligations directly or indirectly related to any payment have been paid, (b) a lien waiver for Subcontractor and all sub-subcontractors and sub-suppliers of any tier in a form acceptable to Contractor, and (c) certified copies of payrolls of Subcontractor, and all sub-subcontractors and sub-suppliers of any tier. Subcontractor shall also immediately reimburse Contractor for any amounts paid by Contractor or under Contractor's payment bond, caused by failure by Subcontractor to make payment as provided in this Article.

   e. Subcontractor expressly agrees that payment by the Owner to the Contractor for any Work performed by the Subcontractor is a condition precedent to any payment by the Contractor to the Subcontractor. If Contractor's payment is held up due to the fault of Contractor, and not due to the fault of Subcontractor, then Subcontractor will be paid on a timely basis, even if Contractor is not paid.

   f. Final payment shall be made: (1) after Subcontractor's work has been accepted by Owner, (2) satisfactory proof of payment of all amounts owed by Subcontractor in connection with this Subcontract has been provided to Contractor, (3) consent of Subcontractor's surety, if any, has been provided, (4) the Subcontractor's Work is complete, and (5) Contractor has been paid in full for the Subcontractor's Work.

   g. Subcontractor accepts exclusive liability for, and agrees to promptly and fully pay, any and all sales tax, use tax, value added tax, road receipts tax and other taxes, premiums, employment taxes, and contributions required of Subcontractor, any sub-subcontractors and sub-suppliers of any tier, by federal, state or local acts or regulations. Subcontractor agrees to furnish Contractor with suitable written evidence that it has fulfilled such obligations. Subcontractor shall indemnify and hold harmless Contractor and Owner with respect to the payment of any such taxes, premiums or contributions under any applicable act, law or regulation, including interest and penalties.

   h. Contractor may withhold from any payment, including final payment, such amount as Contractor, in its discretion, deems reasonably necessary to protect itself against any actual or potential liability or damage directly or indirectly relating to the Subcontract, or for any liability or damage for which Subcontractor otherwise may be liable to Contractor.

3. <u>Subcontractor's Investigations and Representations</u>

   Subcontractor represents that it is fully qualified to perform this Subcontract, and acknowledges that, prior to the execution of this Subcontract, it has (a) by its own independent investigation ascertained (i) the Work required by this Subcontract, (ii) the conditions involved in performing the Work, and (iii) the obligations of this Subcontract and the Contract Documents; (b) inspected the Project site and thoroughly examined all general or local conditions that could affect the Work and; (c) verified all information furnished by Contractor or others and has satisfied itself as to the correctness and accuracy of that information. Any failure by Subcontractor to independently investigate and become fully informed will not relieve Subcontractor from its responsibilities hereunder. Failure of Subcontractor to make a written inquiry to Contractor prior to bidding shall constitute a complete waiver and release of all Subcontractor's claims arising out of or based on any facts, conditions, risks, contingencies or ambiguities that were discovered, or should have been discovered, by the Subcontractor as a result of the investigation and inspection described herein.

Subcontract Agreement 5/1/01 Edition

iagrm.doc

4. Subcontractor's Liability

   a. Subcontractor hereby assumes the entire responsibility and liability for all Work, supervision, labor and materials provided hereunder, whether or not erected in place, and for all plant, scaffolding, tools, equipment, supplies and other things provided by Subcontractor until final acceptance of the Work by Owner. In the event of any loss, damage or destruction thereof from any cause, and except to the extent that either Owner or Contractor provide Builders Risk insurance coverage for such loss, damage or destruction, Subcontractor shall be liable therefor, and shall repair, rebuild and make good said loss, damage or destruction at Subcontractor's cost. In the event damage to the Work is covered by any insurance policy provided by the Contractor or Owner, Subcontractor will pay the deductible amount.

   b. Subcontractor shall be liable for all costs Contractor incurs as a result of Subcontractor's failure to perform this Subcontract in accordance with its terms. Subcontractor's failure to perform shall include the failure of sub-subcontractors and sub-suppliers of any tier to perform. Subcontractor's liability shall include, but not be limited to: (1) damages and other delay costs payable by Contractor to Owner or other third party; (2) Contractor's increased costs of performance, such as extended overhead and increased performance costs resulting from Subcontractor-caused delays or improper Subcontractor work; (3) warranty and rework costs; (4) liability to third parties; and (5) attorneys' fees and related costs.

   c. Indemnification

   To the fullest extent permitted by applicable law, Subcontractor agrees to indemnify, hold harmless and defend Contractor, Owner and their respective directors, officers, agents and employees from and against all claims, damages, demands, losses, expenses, causes of action, suits or other liabilities (including all costs and reasonable attorneys' fees), of every kind and character arising, or alleged to arise, on account of bodily injuries, personal injuries, death suffered by any persons (whether they be third persons, Subcontractor, or employees of either of the parties hereto or any sub-subcontractor or sub-supplier at any tier) or damage to property in any way occurring, incidental to, arising out of, or in connection with the Subcontract Work performed or to be performed by Subcontractor or any sub-subcontractors or sub-suppliers of any tier. The Subcontractor's obligation under this paragraph does not extend to indemnifying Contractor or Owner against Contractor or Owner's own negligence. This indemnification is in addition to any indemnification requirements imposed on the Subcontractor as a result of the Contract Documents, which requirements are expressly incorporated herein. This indemnification shall not be limited as to the amount or types of damages, including, without limitation, compensation or benefits payable by or for Subcontractor or under any worker's compensation acts, disability or benefit acts, or other employee benefit acts. Subcontractor expressly acknowledges that it has received from Contractor One Hundred Dollars ($100.00) and other fair, adequate and separate consideration in return for its agreement to provide indemnification as provided herein.

   d. Subcontractor shall also procure and maintain contractual liability insurance as necessary to secure the indemnification obligations set forth herein above. This insurance obligation shall be independent from the indemnification obligation itself.

5. Subcontractor's Insurance

   Prior to commencing the Work, Subcontractor shall procure, with Contractor and Owner as additional insured parties, and with certificates of same provided to Contractor in advance of commencing of the Work, and thereafter maintain, at its own expense, until final acceptance of the Work, insurance coverage as more fully described in the Contract Documents, and in a form and from insurers acceptable to Contractor. If Contractor requires separate or different insurance coverages of Subcontractor than those contained in the Contract Documents, the insurance coverages required of Subcontractor will be set forth in an attached Exhibit "A."

6. Time of Performance

   a. Subcontractor will proceed with the Work in a prompt and diligent manner, in accordance with the Schedule set forth in paragraph 4 of the Subcontract Provisions, as reasonably amended from time to time. **TIME IS OF THE ESSENCE**. Subcontractor shall be entitled to additional compensation for compliance with schedule amendments only to the extent, if any, that the Contract Documents entitle Contractor to reimbursement and Contractor actually receives such reimbursement.

   b. If requested by Contractor, Subcontractor shall submit a detailed schedule for performance of the Subcontract, in a form acceptable to Contractor, which shall comply with all scheduling requirements of the Contract Documents and with Article 6.a, above. Contractor may, at its sole discretion, direct Subcontractor to make reasonable modifications and revisions in said schedule.

   c. Subcontractor will coordinate its work with the work of Contractor, other subcontractors, and Owner's other contractors, if any, so no delays or interference will occur in the completion of any part or all of the Project. In the event any other contractor or subcontractor damages the Work or otherwise damages Subcontractor in the performance of the Work, Subcontractor shall neither seek nor be entitled to any compensation from Contractor, but shall seek its damages directly from such other party.

   d. Should the Subcontractor's performance of this Subcontract be delayed, impacted or disrupted by any acts of the Contractor, other subcontractors, or Owner's other contractors, if any, or be delayed, impacted or disrupted by any acts or causes which are beyond the fault of and unforeseeable by the Subcontractor or sub-subcontractors and sub-suppliers of any tier, the Subcontractor shall receive an equitable extension of time for the performance of this Subcontract to the extent an extension of time is granted to the Contractor under the Contract Documents, but shall not be entitled to any increase in the Subcontract Price or to damages or additional compensation as a consequence of such delays, impacts, disruptions, or acceleration resulting therefrom, subject only to the exception where the Owner is adjudicated to be liable and, in fact, compensates Contractor for such delays, impacts, disruptions, or acceleration. Contractor will pay the Subcontractor the amount allowed and paid by the Owner for the Subcontractor's delay, impact, disruption or acceleration. Within five (5) days after the commencement of any delay, impact or disruption, or acceleration caused by Contractor, other subcontractors, or Owner's other contractors, if any, the Subcontractor shall notify Contractor in writing stating the full details of the cause of the alleged delay, impact, disruption or acceleration. Failure to furnish in a timely manner such notice shall constitute a complete waiver and release of the Subcontractor's right to claim on account of such delay, impact, disruption or acceleration. The Subcontractor shall notify Contractor of any delays, impacts, disruptions or acceleration for which the Owner may be responsible within five (5) days after commencement of such delays, impacts, disruptions or acceleration, or 2/3rd of the time allowed for the Contractor to furnish the Owner notice under the Contract Documents, whichever is less, so that any claim may be timely processed against the Owner. Failure to furnish such notice in a timely manner shall constitute a complete waiver and release of the Subcontractor's right to claim.

7. Changes and Claims

08/02/2002 10:53 7812334033 BOSTON STEEL PRECAST PAGE 02/02

  a.  Contractor may, at any time, unilaterally or by agreement with Subcontractor, and without notice to sureties, make changes in the Work covered by this Subcontract. Any unilateral order, or agreement, under this Article 7.a. shall be in writing. Subcontractor shall perform the Work as changed without delay.

  b.  Subcontractor shall submit in writing any claims for adjustment in the price, schedule or other provisions of the Subcontract claimed by Subcontractor for changes directed by Owner, or for damages for which the Owner is liable, or as a result of deficiencies or discrepancies in the Contract Documents, to Contractor in time to allow Contractor to comply with the applicable provisions of the Contract Documents. Failure of the Subcontractor to furnish such claims on a timely basis shall constitute a complete waiver and release of the Subcontractor's right to claim. Contractor shall process said claims in the manner provided by and according to the provisions of the Contract Documents so as to protect the interests of Subcontractor and others including Contractor. Subcontract adjustments shall be made only to the extent that Contractor receives relief from or must grant relief to Owner.

  c.  Subject to the express limitations set forth in paragraph 6.d., when there are changes ordered by Contractor independent of the Owner or the Contract Documents, Subcontractor shall be entitled to equitable adjustment in the Subcontract Price, if Subcontractor submits in writing to Contractor its claim within five (5) days of the beginning of the event for which claim is made.

  d.  Nothing shall excuse subcontractor from prosecution of and completion of the Work while resolution of a claim, dispute or other controversy is pending.

  e.  Subcontractor shall indemnify and hold Contractor harmless from any cost, expense, fine or liability (including attorney's fees) resulting from a claim or portion of a claim submitted by Subcontractor which turns out to be wrongful or groundless.

8.  Subcontractor's Failure to Perform

  a.  If, in the opinion of Contractor, Subcontractor shall at any time (1) refuse or fail to provide sufficient properly skilled workmen or materials of the proper quality, (2) fail in any respect to prosecute the Work according to the Schedule, (3) cause, by any action or omission, the stoppage of, delay of, or interference with the Work of Contractor or of any other subcontractor, or other contractors employed by the Owner, if any, (4) fail to comply with all provisions of this Subcontract or the Contract Documents, (5) be adjudged a bankrupt, or make a general assignment for the benefit of its creditors, (6) have a receiver appointed, or (7) become insolvent or a debtor in reorganization proceedings, then the Contractor may at its option (i) without voiding the other provisions of the Subcontract and without notice to the sureties, take such steps as are necessary to overcome the condition, in which case the Subcontractor shall be liable to Contractor for the cost thereof, or (ii) terminate the Subcontract for default.

  In the event the Contractor exercises its option under (i), this may include the furnishing of such labor, materials or supplies as is necessary in the sole opinion and discretion of the Contractor to achieve a timely completion of the Work. Since Contractor is under no obligation to terminate Subcontractor from the job, at the election of Contractor, the Subcontractor, although in default, will diligently continue to prosecute the work to completion in coordination with the Contractor's supplemental efforts, if any. Subcontractor shall be fully liable for all such costs incurred by Contractor, including a fee of ten percent (10%) of the costs of any supplemental labor, material or supplies to compensate the Contractor for having to undertake the supplemental construction activities.

  In the event Contractor exercises its option under (ii) above, Contractor may, at its option, (1) enter on the premises and take possession, for the purpose of completing the Work, of all materials and equipment of Subcontractor, (2) require Subcontractor to assign to Contractor any or all of its subcontracts or purchase orders involving the Project, or (3) complete the Work either by itself or through others, by whatever method Contractor may deem expedient. In case of termination for default, Subcontractor shall not be entitled to receive any further payment until the Work shall be fully completed and accepted by Owner. At such time, if the unpaid balance of the Subcontract Price to be paid shall exceed the expense incurred by Contractor in completing the Work, including an overhead fee of ten percent (10%) of the costs of completing the Work, such excess shall be paid by Contractor to Subcontractor. If the unpaid balance of the Subcontract Price shall be less than the expenses incurred by Contractor in completing the Work, including an overhead fee of ten percent (10%) of the cost of completing the Work, then Subcontractor shall pay Contractor the difference within five (5) business days following demand by Contractor. Subcontractor shall pay all reasonable costs of collection, if any.

  b.  If Contractor wrongfully terminates Subcontractor under Article 8, the termination shall be deemed to be a termination for convenience, as provided in Article 13.

9.  Resolution of Disputes

  a.  In case of any dispute between Contractor and Subcontractor, due to any action or omission of Owner, its agents, employees, or Owner's other contractors or involving the Contract Documents, Subcontractor agrees to be bound to the same extent that Contractor is bound to Owner by the terms of the Contract Documents, and by any and all preliminary and final decisions or determinations made thereunder by the party, board or court so authorized in the Contract Documents or by law, whether or not Subcontractor is a party to such proceedings. In case of such dispute, Subcontractor will comply with all provisions of the Contract Documents allowing a reasonable time for Contractor to analyze and forward to Owner any required communications or documentation. Failure to strictly comply with the provisions of the Contract Documents or this Subcontract shall constitute a complete waiver and release of the Subcontractor's right to claim. Contractor will, at its option (1) present to Owner, in Contractor's name, or (2) authorize Subcontractor to present to Owner, in Contractor's name, all of Subcontractor's claims and answer Owner's claims involving Subcontractor's Work, whenever Contractor is permitted to do so by the terms of the Contract Documents. If such dispute is prosecuted or defended by Contractor, Subcontractor agrees to furnish all documents, statements, witnesses, and other information required, and to pay or reimburse Contractor for all costs, including attorneys' fees, incurred in connection therewith. The Subcontract Price shall be adjusted by Subcontractor's allocable share determined in accordance with Article 7 hereof.

  b.  With respect to any controversy between Contractor and Subcontractor not involving Owner or the Contract Documents, Contractor shall issue a decision which shall be followed by Subcontractor in executing the remaining Work. If the Subcontractor is correct as to the controversy, Subcontractor shall be entitled to an equitable adjustment in the Subcontract Price as its sole remedy. Notification of any such claim for equitable adjustment must be asserted in writing within ten (10) days of Subcontractor's knowledge of the claim. Failure to strictly comply with this notice provision shall constitute a complete waiver and release of the Subcontractor's right to claim.

  c.  Anything to the contrary in the Contract Documents notwithstanding, any controversy between Contractor and Subcontractor not involving Owner or the Contract Documents and which is not amicably resolved by the Parties will be submitted to a court of competent jurisdiction in the state where the Project is located. In no event will any such controversy be submitted to arbitration, except at the sole option of Contractor. In the event the Contractor, in its sole discretion, elects to arbitrate, then the Contractor may join any other subcontractor or third party in any arbitration proceeding.

10.  Warranty

  Subcontractor warrants its Work hereunder to Contractor on the same terms, and for the same period, as Contractor warrants the work to Owner under the Contract Documents; and with respect to Subcontractor's Work, Subcontractor shall perform all warranty obligations and responsibilities

assumed by Contractor under the Contract Documents. If no warranty period is stipulated in the Contract Documents, then Subcontractor warrants for a period of one (1) year from the date of final acceptance by Owner of all Work under the Subcontract, that all such Work will be (1) free from defects in workmanship or materials, (2) merchantable, (3) fit for its intended purpose, and (4) in conformance with all applicable specifications, drawings, samples, symbols and other Contract Documents.

11. <u>Liens</u>

a. If in the Prime Contract, Purchaser has been required to waive and release its right to file a mechanics lien against the Project, then this shall be a "no lien" Purchase Order, whereby Supplier expressly waives, releases and discharges for itself and for sub-subcontractors and sub-suppliers of any tier, any and all rights to file any lien, attachment, or claim of any kind against the Project on account of materials, services, supplies or labor furnished for the Project. Supplier in such case shall similarly include such "no lien" provision in any and all sub-subcontracts and purchase orders that it enters into.

b. In the event that liens are filed by anyone in relation to the labor or material being furnished by Subcontractor, Subcontractor agrees to protect, indemnify and hold harmless Contractor and Owner therefrom, and to have the same discharged or removed, by posting a bond with the appropriate authorities, or otherwise, at Subcontractor's own cost and expense (including attorneys' fees) within five (5) days after notice to do so by Contractor. In the event such lien is not so discharged, such circumstance shall be deemed a failure to perform the Work on the part of the Subcontractor, subject to the conditions and terms set forth in Article 8 above.

c. Subcontractor shall, as often as required by Contractor, furnish a sworn statement showing all sub-subcontractors and sub-suppliers who furnish labor or material to Subcontractor, with their names and addresses and the amount due or to become due to each. Like statements may be required from such sub-subcontractors and sub-suppliers of any tier.

d. Without prejudice to the provisions of paragraph 11.a., and prior to final payment, Subcontractor shall provide to Contractor a release of its liens and claims and all liens and claims of all persons furnishing labor or materials for the performance of this Subcontract in a form acceptable to Contractor, along with satisfactory evidence that there are no other liens or claims whatsoever outstanding against the Work.

e. If required by Contractor, Subcontractor shall furnish releases of liens with respect to all prior payments, as part of each request for partial payment other than the initial request.

12. <u>Inspection and Acceptance</u>

Subcontractor shall provide appropriate facilities at all reasonable times for inspection by Contractor or Owner of the Work and materials provided under this Subcontract, whether at the Project site or at any place where such Work or materials may be in preparation, manufacture, storage, or installation. Subcontractor shall promptly replace or correct any Work or materials which Contractor or Owner shall reject as failing to conform to the requirements of this Subcontract. The Work shall be accepted according to the terms of the Contract Documents. However, unless otherwise agreed in writing, entrance and use by Owner or Contractor shall not constitute acceptance of the Work.

13. <u>Termination for Convenience</u>

Contractor shall have the right to terminate this Subcontract, in whole or part, for convenience by providing Subcontractor with a written notice of termination, to be effective upon receipt by Subcontractor. If the Subcontract is terminated for convenience, the Subcontractor shall be paid the amount representing costs which are due from the Owner for its Work, as provided in the Contract Documents, after payment therefor by Owner to Contractor. In no event will Contractor be liable to Subcontractor for any loss of anticipated profits or other consequential damages. The Subcontractor's remedy under this Article 13, shall be exclusive. Nothing herein shall bar withholdings by Contractor permitted by other provisions of the Subcontract.

14. <u>Approvals</u>

a. Subcontractor shall deliver to Contractor copies of shop drawings, cuts, samples and material lists required by Contractor or the Contract Documents and in accordance with the Contract Documents within sufficient time so as not to delay performance of the Project or within sufficient time for Contractor to submit the same within the time stated in the Contract Documents, whichever is earlier. Any deviation from the Contract Documents shall be clearly identified on shop drawings.

b. Contractor's review of shop drawings, cuts, samples and material lists is only for the convenience of the Owner in following the Work and shall not relieve the Subcontractor of its obligation to perform the Work in strict accordance with the Contract Documents, or the proper matching and fitting of the Work with contiguous work. Should the proper and accurate performance of the Work depend upon the proper and accurate performance of other work not included in this Subcontract, Subcontractor shall use all necessary means to discover defects in such other work, and shall report the said defects in writing to Contractor before proceeding with the Work, and shall allow the Contractor a reasonable time to remedy such defects.

c. Subcontractor warrants and agrees that it can and will obtain all requisite approvals from Owner as to its eligibility to serve as a subcontractor and the approvals of all materials and performance of the Work as required by the Contract Documents.

15. <u>Clean-Up</u>

Subcontractor shall clean up its Work and remove all debris resulting from its Work in a manner that will not impede either the progress of the Project or of other trades. If Subcontractor fails to comply with this Article within 24 hours after receipt of notice of noncompliance from Contractor, Contractor may perform such necessary clean-up and deduct the cost from any amounts due to Subcontractor.

16. <u>Assignment</u>

Subcontractor shall not sub-subcontract its Work under this Subcontract and shall not assign or transfer this Subcontract, or funds due hereunder, without the prior written consent of Contractor and Subcontractor's surety. Contractor shall not unreasonably withhold its consent to the assignment of funds due hereunder.

17. <u>Patents and Royalties</u>

Except as otherwise provided by the Contract Documents, Subcontractor shall pay all royalties and license fees which may be due on the inclusion of any patented materials in the Work. Subcontractor shall defend all suits or claims for infringement of any patent rights that may be brought against Contractor or Owner arising out of the Work, and shall be liable to Contractor and Owner for all loss, including all costs and expenses, on account thereof.

18. <u>Licenses and Permits</u>

Subcontractor shall obtain and pay for all permits, licenses, fees and certificates of inspection necessary for the prosecution and completion of its Work, and shall arrange for all necessary inspections and approvals by public officials.

19. <u>Laws, Regulations and Ordinances</u>

Subcontractor agrees to be bound by, and, at its own cost, comply with all Federal, state and local laws, ordinances and regulations applicable to this Subcontract and the performance of the Work hereunder including the Occupational Safety and Health Act of 1970. Subcontractor shall be duly licensed to do business under the law of the applicable jurisdictions. Subcontractor shall be liable to Contractor and Owner for all loss, cost and expense attributable to any acts of commission or omission by Subcontractor or its sub-subcontractors or sub-suppliers of any tier resulting from failure to comply including, but not limited to, any fines, penalties or corrective measures.

20. <u>Labor</u>

a. Neither Subcontractor nor its sub-subcontractors or sub-suppliers of any tier shall employ anyone at the Project whose employment is objected to by Contractor or Owner.

b. Should any workers performing work covered by this Subcontract engage in a strike or other work stoppage or cease to work due to picketing or a labor dispute of any kind, said circumstances shall be deemed a failure to perform the Work on the part of the Subcontractor subject to the conditions and terms set forth in Article 8 above.

21. <u>Equal Opportunity</u>

a. In connection with the performance of Work under this Subcontract, Subcontractor agrees not to discriminate against any employee or applicant for employment because of race, creed, color, sex, age, religion, national origin, sexual orientation, marital status, handicap, disability, citizenship status or veteran status. The aforesaid provision shall include, but not be limited to, the following: employment, upgrading, demotion or transfer; recruitment or advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeship. Subcontractor agrees to post hereafter, in conspicuous places, available for employees and applicants for employment, notices, prepared by Subcontractor, and approved by the government when required, setting forth the provision of this Article 21.

b. Subcontractor shall permit access to its books, records, and accounts by representatives of Contractor or Owner for purposes of investigation to ascertain compliance with the provisions of this Article 21.

c. In the event of Subcontractor's non-compliance with the equal opportunity provisions of this Subcontract, this Subcontract may be terminated for default.

d. Subcontractor shall include the provisions of this Article 21 in every Subcontract or purchase order of any tier. The requirements of this Article 21 shall be in addition to any equal opportunity provisions contained in the Contract Documents.

22. <u>Notices</u>

All notices shall be addressed to the Contractor and Subcontractor at the addresses set out above, and shall be considered as delivered when postmarked, if dispatched by registered mail, or when received in all other cases.

23. <u>Safety</u>

Subcontractor agrees that the prevention of accidents to workers engaged in the Work is the sole responsibility of the Subcontractor. Subcontractor agrees to comply with laws, regulations and codes concerning safety as shall be applicable to the Work and to the safety standards established for the Work by the Contract Documents. When so ordered, the Subcontractor agrees to stop any part of the Work which the Contractor deems unsafe until corrective measures satisfactory to the Contractor have been taken, and further agrees to make no claim for damages growing out of such Work stoppages. Should the Subcontractor neglect to adopt such corrective measures, Contractor may perform them and deduct the cost from payments due or to become due to Subcontractor. Failure on the part of Contractor to stop unsafe practices shall in no way relieve Subcontractor of its responsibility under this Article.

24. <u>Severability and Waiver</u>

The partial or complete invalidity of any one or more provisions of this Subcontract shall not affect the validity or continuing force and effect of any other provision. The failure of either party to insist, in any one or more instances, upon the performance of any of the terms, covenants, or conditions of this Subcontract, or to exercise any right herein, shall not be construed as a waiver or relinquishment of such term, covenant, condition or right as respects further performance.

25. <u>Governing Law</u>

This Subcontract shall be governed by and construed in accordance with the laws of the state in which the Project is located.

26. <u>Advertising</u>

Neither Subcontractor or its sub-subcontractors or sub-suppliers of any tier, shall take photographs of the Work on site, or publish or display advertising matter of any description relating to the Project without first obtaining the written consent of Contractor and Owner.

27. ~~Bond~~ Delete

Within ten (10) days after request by the Contractor, the Subcontractor shall furnish at Contractor's expense a Performance and Payment Bond in the full amount of this Subcontract. The bond form and the surety shall be acceptable to the Contractor.

28. Execution

This Subcontract is signed and received by a legal representative of the Subcontractor authorized to bind Subcontractor to all terms of this Subcontract. Should this Subcontract, because of the manner of execution, not be legally binding upon the Subcontractor for any reason whatsoever, all Work under this Subcontract shall be performed at the risk of the Subcontractor, and, should this Subcontract be voided due to improper execution, Subcontractor agrees to waive all claims for compensation for Work performed.

29. Owner Approval

If the Owner has the right to approve Subcontractor, this Subcontract shall not be effective until the Owner's approval is appropriately indicated. Any Work undertaken by Subcontractor pending the Owner's action shall be for Subcontractor's account if Owner does not give its approval.

30. Complete Agreement

This Subcontract contains the entire agreement between the Contractor and Subcontractor with respect to the matters covered herein. No other agreements, representations, warranties, or other matters, oral or written, shall be deemed to bind the parties hereto.

**IN WITNESS WHEREOF**, the parties, by their duly authorized representatives, have hereunto executed this Subcontract, on the day and year above written.

Execute and return duplicate copy to Cives Steel Company, New England Division, P.O. Box 1077, Augusta, Me 04332-1077.

Witness, Donna M. Rollins

CIVES STEEL COMPANY
Contractor
By: _____
Name: David W. Gugan
Title: Project Manager

Witness

BOSTON STEEL ERECTORS
Subcontractor
By: _____
Name: Bernard MaGuire
Title: President